**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| REFINERY MANAGEMENT, LLC | **:** | Civil Action No.:_____ |
| | **:** | |
| | **:** | Judge:_____ |
| Plaintiff, | **:** | |
| v. | **:** | |
| | **:** | |
| CARBON IQ, INC., d/b/a RUMBY, a | **:** | |
| Delaware Corporation, BENJAMIN | **:** | **PLAINTIFF'S VERIFIED COMPLAINT** |
| CANTEY, as CEO of Carbon, IQ, and | **:** | |
| individually, and JASON "JAY" GOULD, | **:** | |
| as a Board Member of Carbon IQ and | **:** | |
| individually, | **:** | |
| | **:** | |
| Defendants. | **:** | **Demand for Jury Trial** |
| | **:** | |

Plaintiff Refinery Management, LLC ("Refinery") for its Verified Complaint for Damages against Defendants (defined below) upon personal knowledge as to itself and its own acts, and as to all other matters upon information and belief based upon an investigation made by and through it or its attorneys, alleges as follows:

<u>**SUMMARY OF THE ACTION**</u>

1.      This is a securities fraud matter brought against defendants Carbon IQ, Inc., d/b/a Rumby ("Rumby"), Rumby's former CEO and founder Benjamin Cantey ("Cantey"), and Rumby investor and Board Member Jason "Jay" Gould ("Gould," and collectively, "Defendants").

2.      Defendants made materially false and misleading statements and omissions in connection with Refinery's investment of $3 million into Rumby through a Simple Agreement for Future Equity ("SAFE investment") in August 2022.  The SAFE investment contained a list of

"Company Representations" disclaiming any knowledge of violations of various internal and external bylaws, rules, statutes, or regulations. Rumby, via Cantey, represented that this opportunity was an extension of Rumby's existing Seed round prior to the $20 million Series A investment pending with a reputable institutional investor.

3. Cantey, as CEO and founder of Rumby, was responsible for attracting investors to support Rumby during its Seed funding, prior to a Series A round of investing. During the Seed round, Cantey asserted that Rumby needed additional capital to finance its continued growth and movement toward a Series A investment stage. Further, Cantey represented to Refinery that it was important for Rumby to have a local investor and as such he was willing to give Refinery a "deal" through the SAFE investment.

4. In truth, Rumby's capital position was dire and its future investment portfolio was, at best, unclear. Cantey had been fraudulently misappropriating investor funds and Rumby was not profitable. Rumby only had enough capital for a few months of operation and likely needed millions of dollars to reach any level of stability.

5. Before, during, and after the SAFE investment by Refinery, Cantey and/or Gould (collectively, the "Individual Defendants") falsely assured Refinery that Rumby was experiencing significant growth, was financially sound, and had a pending $20 million Series A investment backed by a reputable institutional investor. The statements the Individual Defendants made were materially false and misleading because Rumby was in fact undercapitalized and faced insolvency with only a few months left of financial viability without additional capital being raised or without a potential acquisition.

6. Unbeknownst to Refinery, Rumby and Cantey were also named defendants in a pending lawsuit by former Rumby co-founder Justin Boisvert. *See Boisvert, v. Carbon IQ, Inc. et*

2

*al.*, 2022-CV-3303, ECF No. 19 (C.D. Cal.) (the "Boisvert Litigation"). The Individual Defendants knew of the pending lawsuit, which alleged past fraudulent activity by Cantey in a previous company, PLOT, as well as additional fraudulent activity by Cantey in his dealings with Boisvert. Despite the highly material nature of the Bosivert Litigation to Rumby's business activities, neither of the Individual Defendants disclosed the pending lawsuit to Refinery prior to its investment.

7. In the Boisvert Litigation, Boisvert alleged that Cantey misled him into working together on a new start-up after Bosivert later learned that Cantey had been fired by his previous company for stealing funds and defrauding investors. Boisvert further alleged that Cantey forged his name on an alleged resignation letter and stock purchase to avoid giving Boisvert the promised stock options in Rumby. In total, the complaint in the Boisvert Litigation plead fifteen claims for relief against Rumby and Cantey resulting in estimated damages in the millions of dollars. Had it known of the Bosivert Litigation, Refinery would not have invested in Rumby.

8. Two months after Refinery's investment in Rumby, on October 21, 2022, Gould sent a Notice of Special Meeting of Shareholders to take place on October 24, 2022 (the "October 24 meeting") to discuss information regarding Cantey, an investigation into Cantey, and Cantey's resignation as Rumby's CEO. During the October 24 meeting, Gould detailed a variety of fraudulent activities committed by Cantey, including an un-dated screenshot of Cantey allegedly confessing to such fraud (the "confession email"). In the confession email, Cantey admits to, *inter alia*, falsifying growth numbers to investors, paying himself large commissions from investor funds, failing to file any tax returns for Rumby, and acknowledging that there were only three months of capital remaining for Rumby's operation from the time of the confession email. During

the meeting, Gould noted that Cantey's actions had been reported to the United States Attorney's Office ("U.S. Attorney's Office") in the Northern District of Illinois at Gould's direction.[1]

9.      Gould also disclosed during the October 24 meeting that all Rumby employees had been laid-off at Gould's direction, apart from the current COO, Charles Williams ("Williams"). Gould further disclosed that a review of Rumby's corporate account revealed that Rumby had approximately $370,000 cash on hand, almost "non-existent" current revenue, and only $125,000 top line revenue since inception.  Apart from payroll expenses, Gould said all money raised by investors had been misappropriated and misused by Cantey.

10.      At the October 24 meeting, Gould indicated his intention to resign from Rumby's Board, a position Gould had only assumed on September 1, 2022.  Gould indicated that Williams was willing to serve as interim CEO and as a Board Member.  Rumby's shareholders unanimously voted for Williams to serve in those new roles.  When Williams indicated concern over liability that may attach to him in these roles, Gould assured him that "as an investor, I'm not suing you" and "You're not going to get a lawsuit against you from me, that's for damn sure."  The assurances to Williams were important because Gould learned after joining the Board that Rumby did not have Directors and Officers Insurance ("D&O Coverage").  Williams would therefore not have D&O Coverage.

11.      Having unilaterally decided to lay off all employees but one, having made a referral of the matter to federal authorities, and having nominated a new CEO, Gould tendered his resignation from the Board.  Gould also demanded that the various stakeholders in Rumby sign a "Waiver and Release of Claims Against Jason Gould in his Capacity as Board Member of Carbon IQ, Inc."  Refinery has not signed any such release against Gould.

---

[1] The investigation has since been referred to the United States Attorney's Office for the Southern District of Ohio.  The assigned Assistant United States Attorney is Matthew Singer.

12.     Over the next couple of weeks, the shareholders proposed and interviewed prospective company counsel.  Counsel was retained to represent Rumby ("Company Counsel") on or about November 1, 2022.  The stakeholders interviewed four firms before ultimately retaining Company Counsel.  The path to engaging Company Counsel was fraught with tension amongst the stakeholders on the path Rumby should take.

13.     Gould subsequently made a formal demand to Rumby for indemnification of Gould's approximately $80,000 in legal bills incurred during Gould's effort to purportedly uncover Cantey's fraud.  Company Counsel made requests of Gould to produce records related to his indemnification request, which Gould refused to provide.  Instead, Gould threatened to personally sue Williams because Williams would not go against Company Counsel's advice and immediately indemnify Gould.  Critically, the bylaws permit Rumby 90 days to respond to an indemnification request.  On November 18, 2022, Williams delivered his resignation both as a director and officer of Rumby.

14.     In addition to refusing to provide Rumby with information related to his indemnification claims, Gould has refused to provide Rumby with the documents he produced to the U.S. Attorney's Office.

15.     On November 18, 2022, Gould was informed by Company Counsel that Gould's company, Gould Ventures LLC ("Gould Ventures"), had the right to designate one director to Rumby.  On behalf of Gould Ventures, Gould selected Nicholas DeLuca ("DeLuca"), an individual (rather than institutional) investor in Rumby.  DeLuca accepted the nomination the same day.  DeLuca has subsequently ignored two emails from Refinery about a potential buyer's interest in Rumby.  DeLuca has indicated that he intends to negotiate a deal with Gould to pay his $80,000 in legal fees along with granting Gould "a release from the company."  Given that Rumby has not

had the opportunity to investigate the legality of Gould's actions during his tenure on the Board, DeLuca's agreement to release him from all claims is reckless, premature, and cannot be in Rumby's best interest at this stage.

16.     On or about November 20, Company Counsel resigned because of Gould's threatening and obstructionist behavior.  Company Counsel wrote in part, "It appears that the Company is not taking our advice, and that the Company appears to be effectively controlled by Mr. Gould, and Mr. Gould's counsel has threatened our firm with a lawsuit. And because of that, it is appropriate for [Company Counsel] to resign as counsel."

17.     As a direct result of Defendants' wrongful acts and omissions and Rumby's continued precipitous decline since the fraud was uncovered, Plaintiff has suffered significant financial loss.

## PARTIES

18.     Plaintiff Refinery Management, LLC is a Delaware corporation, with its principal place of business located in Cincinnati, Ohio.

19.     Plaintiff Refinery, through one of its individual funds, Refinery Ventures Fund II L.P., invested $3 million into Rumby through a SAFE investment on August 26, 2022.

20.     Upon information and belief, defendant Carbon IQ, d/b/a Rumby is a private Delaware corporation, with its principal place of business located in Cincinnati, Ohio.

21.     Upon information and belief, defendant Benjamin Cantey served as the founder and CEO of Rumby since its inception in January 2020 until his resignation on October 20, 2022. Cantey is a resident of the State of Ohio.

22.     Based on Rumby's bank records covering April 2021 through October 2022, defendant Jason "Jay" Gould invested $24,000 on July 26, 2021, $100,000 on March 28, 2022,

6

and $140,000 on July 22, 2022 in Rumby, totaling $264,000. During the October 24 meeting, Gould claimed to have invested approximately $500,000 in Rumby. Gould served as a Board Member of Rumby from September 1, 2022 until his resignation on October 24, 2022. Gould is a resident of the State of New Jersey.

## JURISDICTION AND VENUE

23.     This Court has original jurisdiction over the claims herein pursuant to § 27 of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78aa) and 28 U.S.C. §§ 1331 (federal question jurisdiction), as well as supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because all of the claims asserted arise out of a common nucleus of operative facts and form part of the same case or controversy.

24.     The claims asserted herein arise under Section §10b of the Exchange Act (15 U.S.C. § 78j(b) & § 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

25.     This Court has personal jurisdiction over Rumby because its principal place of business is located in the State of Ohio and over Cantey because he is a resident of the State of Ohio.

26.     This Court may exert specific personal jurisdiction over Gould under O.R.C. 2307.382 because he has sufficient minimum contacts with the State of Ohio related to the conduct at issue so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because defendants Rumby and Cantey reside in this District and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial part of property that is subject to the action, is in this District.

## BACKGROUND

28.     Rumby is a tech start-up company designed to bring laundry services to the digital age.  Cantey originally founded Rumby, along with co-founder Justin Boisvert, as an HR software company but quickly pivoted to providing pickup and delivery services for laundry and dry-cleaning businesses.

29.     Since Rumby's inception, Cantey recruited diverse investors to support what he described as the "Go to Market" phase 1 and 2.  Cantey purported that such investments and stages were leading to the Series A round where Rumby anticipated raising $15-20 million to support capital deployment strategies.  Near the end of the Seed round, Cantey sought a local investor and was willing to offer a significant deal to secure the timely support of Cincinnati based capital.

## FALSE AND MISLEADING STATEMENTS AND OMISSIONS BY DEFENDANTS

30.     Refinery first connected with Cantey in July 2022 and discussions of a potential investment began in August 2022.  On August 18, 2022, Cantey emailed a Senior Associate at Refinery claiming that Rumby was "2-3 weeks from closing our Series A round."  Cantey also provided the first of two slide decks containing information about Rumby.  The deck falsely contained claims that Rumby was connected to over 1300 cleaners in over 160 cities.  The deck also represented that the alleged revenue for May 2022 was just over $175,000 with a company "runway" (length of time it has before it would run out of cash) of 18 months.  Cantey promised to soon provide an updated "formal" slide deck that was prepared for the Series A round.

31.     Cantey also provided access to a financial model which allegedly contained Rumby's financials from January 2022 to June 2022.  However, this data was later revealed to be fabricated.  Similarly, Cantey provided a link to investor updates containing what his confession email indicates was fabricated data.

32.     During conversations with Cantey on August 24, 2022, Cantey represented that Rumby had a strong growth record and exciting future earnings prospects.  Cantey did not mention anything regarding pending litigation against him and the company.  Cantey instead made false representations about his time with his former company and about how he "sold" it for around $30 million.  This is the same company that the Boisvert Litigation claimed Cantey had been fired from for defrauding investors and stealing company funds.

33.     On August 26, 2022, Cantey claimed that Rumby was "days away" from signing a term sheet with a large, reputable venture capital firm on its Series A round, claiming there were two final potential investors which "would lead with $15mm checks."  Cantey claimed another venture capital firm was "trying to follow on with $3-4mm in the series A" as well.  Cantey told Refinery that they were just finalizing the terms before they would share the details with all investors.

34.     In reality, Rumby was struggling, unprofitable, and was on the verge of insolvency. For example, the 18 months of "runway" Cantey claimed Rumby had was patently false; in reality, Rumby's months of runway was likely in the single digits by August 2022 and Rumby's bank account balance at the start of August 2022 was around $47,000.

35.     Further, Rumby was not "days away" from signing on its Series A round investment.  Later emails reveal that a potential institutional investor had only decided to create a term sheet weeks later in early September 2022.

36.     At the time Cantey spoke with Refinery and provided the written investment materials, Cantey knew that the data he was providing was false.  Such statements do not fall under any safe harbor for "soft information" concerning predictive statements, but were hard facts that Cantey knew would mislead Refinery into its investment.  Cantey later admitted in an email

provided by Gould at the October 24 meeting that he had been misappropriating the investor's funds and that the numbers he provided investors were false. Gould inexplicably excised the date of Cantey's confession email, and the distribution list, leaving shareholders in the dark as to when Gould himself received the email.

37. Cantey had a duty to disclose the pending Boisvert Litigation to Refinery during the investment conversations. Such litigation, indicating potential fraud on behalf of Cantey, would be a material fact that any reasonable investor would find to significantly alter the likelihood of committing to the investment. Similarly, a reasonable investor would also find the actual data regarding Rumby's growth potential, success, and current financial status, rather than Cantey's misrepresentations, as significant in its decision to invest.

38. Refinery justifiably relied on such representations from Cantey because no facts or circumstances suggested it was being deceived with regard to Rumby or Cantey. Refinery had not been put on notice to doubt the truthfulness of Cantey's representations, not insignificantly because of the due diligence conversations Refinery had with Gould prior to its SAFE investment.

39. On August 26, 2022, Refinery contacted Gould in order to perform a due diligence check on Rumby as a potential investment. Gould knew during this call that the purpose of the call was to provide Refinery information needed to make a decision on participating in the SAFE investment. In fact, Gould noted in the October 24 meeting that he spoke with Refinery before its investment to help provide due diligence. Gould took on the duty to speak truthfully by choosing to speak on the soundness of the investment. Further, Gould knew that Refinery was relying on his representations about Rumby and Cantey.

40. During Refinery's conversation with Gould, Gould knowingly failed to disclose the Boisvert Litigation to Refinery. Gould knew on or before August 18, 2022 of the Boisvert

10

Litigation so he had full knowledge at the time of the due diligence check with Refinery. Despite being aware of the Bosivert Litigation and the material impact it could have upon Refinery's potential investment, Gould intentionally chose not to disclose the Boisvert Litigation to Refinery. In the alternative, Gould acted with deliberate recklessness by departing from any standard of care by misleading Refinery during its due diligence call.

41.    Gould knew the purpose of the call was to gather information on Rumby and Cantey, and yet Gould failed to mention a material fact that would affect any investor's decision. As a sophisticated entrepreneur and investor, Gould knew how important such information is to investors. In fact, during the October 24 meeting, after admitting that he provided due diligence to Refinery, Gould stated that if there was one lesson he had learned after discovering Cantey's misappropriations, it was "I think you need to have a lot more conversations with the people on the CAP table along the way. Just sharing information, we probably would have seen cross-references of things that didn't add up." That was exactly what Gould failed to do when Refinery looked to him for important information on its investment.

42.    Gould also made material misrepresentations about Cantey and Rumby during the August 26, 2022 due diligence call. Despite knowing that Cantey had been accused of fraud in the Boisvert Litigation, Gould continued to make affirmative statements regarding Cantey and the probability of other potential investments in Rumby. Gould emphasized Cantey's abilities despite knowing that Boisvert was alleging prior fraudulent conduct by Cantey at Cantey's former company as well as fraudulent conduct by Cantey while at Rumby (*e.g.* by forging documents). Gould also noted that Cantey was not taking a salary from Rumby and that Rumby had other large venture capital interest from well-respected firms. The Boisvert Litigation alone was enough to put Gould on notice of potential bad conduct by Cantey, and, as such, Gould acted with a reckless

disregard for the truth by making such affirmative statements when the danger of misleading Refinery was clear. Finally, when Refinery asked about why Rumby was offering Refinery the deal it had,[2] Gould validated that the deal was unusual but that "was the kind of guy Ben is."

43. Refinery justifiably relied on such representations from Gould. The entire purpose of the communication was to confirm the soundness of the investment, and no facts or circumstances surrounding the investment suggested to Refinery that it was being deceived with regard to Rumby or Cantey.

**SUBSEQUENT DISCLOSURES REVEAL EXTENT OF FRAUD**

44. On September 1, 2022, less than one week after Refinery executed its SAFE investment in Rumby, Gould joined Rumby's Board of Directors.

45. Less than two months later, on October 20, 2022, Cantey resigned as CEO of Rumby. Yet, on October 14, 2022, days before Cantey resigned his position as CEO, Cantey continued his deceptive practice and provided Refinery with a term sheet supposedly representing the terms of a $20 million Series A investment with a reputable institutional investor. Cantey also provided a second slide deck that was described as its "Series A deck," with continued misrepresentations about the company, its financial status, current growth potential, and past gross merchandise revenue.

46. Refinery did not hear from Gould during the intervening weeks, until October 21, 2022 when Gould sent a Notice of Special Meeting of Shareholders of Carbon IQ, Inc set for October 24, 2022 regarding potential fraud committed by Cantey while at Rumby. Gould's meeting notice informed the shareholders that the purpose of the meeting was to share information

---

[2] The way the investment was set up, Refinery's $3 million investment would be worth $7.5 million upon closing of the Series A round.

discovered about Cantey, a subsequent investigation into Cantey, and Cantey's resignation as CEO from Rumby.

47. Refinery reached out to Gould after the Notice was sent, and Gould shared with Refinery that after joining the Board of Directors, he noticed certain claims from Cantey seemed to be incorrect. Gould revealed that he called a contact with one of the large venture capital firms Cantey indicated had interest in Rumby. Gould discovered that the firm had not spoken with Cantey in some time. Gould then requested documents from Rumby, so a third party investigator could evaluate any potential wrongdoing. Gould claims it was this investigation which uncovered the fraudulent conduct by Cantey.

48. Gould, as the sole Board Member, ran the October 24 meeting in conjunction with his personal counsel. During this meeting, Gould knowingly withheld key information from shareholders about the investigation. Gould, as the sole remaining director, had a fiduciary duty to provide as much information as available to shareholders, yet, the presentation included strategic screenshots of information clearly withholding important information from the group.

49. As discussed further below, this was only the beginning of obstructionist behavior by Gould which continued well after his presentation to the shareholders on October 24, 2022. At the end of the shareholder's meeting, Gould resigned as the only remaining Board Member and the shareholders approved the COO, Charles Williams, as the interim CEO and sole Board Member. Gould learned after joining the Board that Rumby did not have Directors and Officers Insurance ("D&O Coverage"). Williams would therefore not have D&O Coverage.

50. During the call, Gould explained that the aforementioned internal investigation executed by an independent third party provided insight into Rumby's bank accounts revealing the extent of Cantey's fraudulent activity as well as the dire financial situation Rumby was in.

51.     Cantey's confession email admits to paying himself large commissions, and the bank records support such claims.  This was despite the fact that Rumby's financial models., which Refinery reviewed prior to its investment, showed that Cantey was not drawing any salary.  For example, in May, Rumby's beginning balance included over $1 million in capital.  However, following an $850,000 loan from another institutional investor on May 6, 2022, which brought the balance close to $2 million, Cantey wired $1 million the same day to an IOTA Trust account which was used in conjunction with another wire transfer of $695,000 on May 9, 2022 to the same Trust account to buy a house in the upscale Cincinnati neighborhood of Hyde Park.  Rumby's ending balance in May was a deficit of -$53,000.

52.     Cantey's most egregious misuse of investor funds was purchasing the $1.7 million home.  Hamilton County Ohio public records show that on May 15, 2022, a Hyde Park mansion was transferred from its previous owner to a trust in the name of an attorney at Thompson Hine.  Five days later, the residence was against transferred from the trust account to Cantey with a sale price recorded at just over $1.7 million.

53.     As yet another example, the beginning balance of Rumby's account in August 2022 was just over $47,000.  Yet, after Refinery's $3 million SAFE investment processed on August 29, 2022, the ending balance as of August 31, 2022 was only $1.2 million.  In a matter of days, $1 million of Refinery's investment was gone (approximately $850,000 was used to repay the May 6, 2022 loan from the institutional investor).

54.     Among the remaining $1 million in transfers out of Rumby's account during the last three days of August was nearly $200,000 toward a multi-year, multi-million dollar Bengal's sponsorship contract that included a 16-seat suite, $365,000 in two separate transfers to Cantey himself, and $18,000 on a purchase from Cartier.

55.     In early September, while Gould was a Board Member, Cantey again transferred approximately $81,000 from the Rumby business account to a personal account of his.

56.     While Cantey clearly breached his fiduciary duty through flagrant misappropriations of company funds, Gould also breached his fiduciary duty since becoming a Board Member in September 2022 by failing to quickly share information with shareholders, including Refinery, and failing to take necessary actions to preserve as much value as possible in Rumby.

57.     Rumby's COO, Williams, at the direction of Gould, fired all 22 of Rumby's employees eliminating any chance for Rumby to continue operations.  Gould failed to even consider maintaining a skeleton crew of employees, which would have been a minimal cost to Rumby, and would have maintained the existing platform for customers and preserved value in the company for the multiple interested buyers.

58.     Further, on October 21, 2022, Cantey emailed Gould through their respective attorneys about a potential acquisition of Rumby by Laundry Capital, yet this was presented as a non-opportunity during the October 24 meeting.

**OBSTRUCTIONIST AND THREATENING BEHAVIOR BY GOULD**

59.     Gould's interference did not stop following his resignation from the Board at the October 24 meeting.  Since that meeting, Gould has engaged in additional obstructionist behavior.

60.     During the October 24 meeting, Gould and his counsel strongly encouraged Williams to step up as the interim CEO promising that his risk of liability was low and that "You're not going to get a lawsuit against you from me, that's for damn sure," Williams later recalls Gould telling him "Charles, no one is ever going to sue you because you didn't do anything wrong, you

haven't taken any board actions and you don't have any resources." Yet despite such assurance, Gould has done just that and threatened to sue Williams in response to an indemnification demand.

61.    On November 15, 2022, counsel for Gould contacted Rumby's Company Counsel demanding immediate indemnification for Gould and payment of his legal fees to date. Gould's counsel indicated Gould was intending to file a complaint against Rumby unless it agreed to indemnify Gould and pay at least a portion of his legal fees. Gould made these demands and threats despite the fact that Rumby was following the process set out in Rumby's bylaws regarding indemnification (allowing 90 days to pay a legitimate indemnification request) and despite Gould failing to provide all the necessary documentation requested by Company Counsel in order for Rumby to make an indemnification decision. Documents Gould refused to provide also included the documents he provided to the U.S. Attorney's Office on his referral of Cantey.

62.    On November 15, 2022, Gould, in an email to shareholders, threatened to sue Williams, among others, if his indemnification demand was not paid and Gould even indicated that his attorney "ha[d] prepared a lawsuit which I [*i.e.* Gould] will be forced to file if we do not receive payment for the indemnification claim in a timely manner." Gould's threatening behavior cost Rumby its interim CEO and Board member.

63.    In an email to Rumby shareholders dated November 23, 2022, Williams directly addressed Gould and made no secret about Gould's intimidation tactics:

> I have been repeatedly instructed by you to take various actions regarding this repayment and each time relied on [C]ompany [C]ounsel to make decisions rather than doing so independently. Regardless of how I personally feel about your repayment, I relied on [Company Counsel] to provide their legal opinion which was included in last Saturday's update and the attached email rather than calling a special shareholder meeting to take a vote on your repayment as instructed by you. I was told by [Company Counsel] that this was a legal issue that didn't require a shareholder vote and to include their position in the weekly update and direct any questions to [Company Counsel]. This is the reason why hours have been expended

16

to establish a legal position on the payment you're demanding. I am not stonewalling, denying or delaying you receiving payment, but instead following the process as I understood it which should be for the good of the entire shareholder group. Now you're threatening to sue me personally for "his oral agreement to pay for Mr. Gould's fees" which is exactly what I desired to avoid by insisting we have [Company] [C]ounsel onboard. You also stated to me[,] "Charles, no one is ever going to sue you because you didn't do anything wrong, you haven't taken any board actions and you don't have any resources". Looks like that has changed.

To that end, it appears that my efforts to be helpful to the company and not cause any personal exposure isn't working out. It is my intention to resign as of the end of day Wednesday, November 16, 2022 from the board as well as Interim-CEO of Carbon IQ if this issue isn't satisfactorily resolved. I will work with [Company Counsel] tomorrow to review the resignation process.

64.     On November 18, 2022, Williams tendered his resignation as an officer and director at Rumby. The loss of Williams is immeasurable at Rumby. Williams was the one with the relationships with current customers, and the one with intimate knowledge of Rumby's platform.

65.     Not only has Gould made threats against Rumby and Williams, but prior to the October 24 meeting, Gould demanded a fellow shareholder sign a mutual release after the investor informed Gould of the Boisvert Litigation. Despite back and forth communications, the release was never signed.

66.     Also on November 18, 2022, Company Counsel informed Gould that paperwork in its possession indicated Gould Ventures had the right to designate one director to Rumby. On behalf of Gould Ventures, Gould selected Nick DeLuca, one of the smallest individual investors in Rumby. DeLuca invested $25,000 in July 2022. DeLuca accepted the nomination the same day and has since ignored multiple emails from Plaintiff regarding a buyer's interest in Rumby. DeLuca has provided one email update to shareholders to date. Based on the format, tenor, and content of the email update, coupled with his appointment by Gould, DeLuca appears to be Gould's

latest pawn.  By all accounts, Gould and his personal counsel are advising DeLuca on company strategy.

67.    Company Counsel withdrew from representing Rumby on November 20, 2022.[3] Company Counsel wrote in part, "It appears that the Company is not taking our advice, and that the Company appears to be effectively controlled by Mr. Gould, and Mr. Gould's counsel has threatened our firm with a lawsuit. And because of that, it is appropriate for [Company Counsel] to resign as counsel."  Despite the shareholders sitting through hours of presentations from four firms pitching for the role of company counsel, and the shareholders voicing their individuals opinions for Williams to consider in making the ultimate choice, DeLuca failed to timely inform shareholders that Company Counsel withdrew.  Rather, Plaintiff informed the shareholders of this development on November 23, 2022.

68.    As a direct result of Defendants' wrongful acts and omissions and Rumby's continued precipitous decline since the fraud was uncovered, Plaintiff has suffered significant financial loss.

## CLAIMS FOR RELIEF

### COUNT I
### For Violation of § 10(b) of the Exchange Act and Rule 10b-5 (Against all Defendants)

69.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70.    This Count is alleged against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a) and Rule 10b-5 promulgated thereunder.

---

[3] Company Counsel was not the first firm to withdraw its representation of Rumby.  A prior firm represented Rumby up until approximately September 2022 but withdrew because of a purported conflict of interest that arose from Cantey's undated confession email.  *See supra* ¶ 8.

71.     During the relevant period, Defendants engaged in a course of conduct, in which they knowingly, or recklessly, made untrue material statements and failed to disclose material information in connection with the sale of securities.  Such actions were relied upon by the Plaintiff to its detriment.

72.     Upon information and belief, Rumby was on the verge of insolvency and there were allegations of fraud against Cantey at or near the time Plaintiff made its SAFE investment into Rumby.  During that time, none of this material information was made available to Plaintiff, and Defendants instead made material misrepresentations about the growth and success of Rumby.  These misrepresentations and omissions include, but are not limited to: (a) grossly and materially inflating Rumby's growth numbers; (b) grossly and materially inflating Rumby's current capital; (c) misleading statements about other pending and potential investments in Rumby by large institutional investors; (d) omitting any information regarding the pending Boisvert Litigation; and (e) grossly and materially misrepresenting Cantey's trustworthiness.

73.     Each of the Defendants participated either directly or indirectly in preparing or promulgating various investment materials and other statements and documents designed to misrepresent the status of Rumby as a worthy investment.  Such statements and materials were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Rumby's financial state and other investment prospects as described above.

74.     The Individual Defendants, by virtue of their positions in Rumby, had actual knowledge of the materially false and misleading statements and material omissions alleged herein.  In the alternative, Gould acted with a reckless disregard for the truth in that he failed to obtain the necessary knowledge by taking the steps necessary to reveal whether his statements and

omissions were false or misleading, although such knowledge was readily available to him. Such statements and omissions were committed willfully or with reckless disregard for the truth by the Individual Defendants. In addition, Cantey knew, or recklessly disregarded, the fact that material facts regarding the Boisvert Litigation were being omitted by Gould to Refinery as described above.

75. Information showing that the Individual Defendants acted knowingly or with reckless disregard for the truth is within Individual Defendants' knowledge and control. The Individual Defendants are liable both directly and indirectly for their actions described herein. Cantey's position as CEO and founder provided him with control over the investment materials and statements regarding Rumby, and he had a fiduciary duty to disseminate such material information in a timely, accurate, and truthful manner. Gould's position at the time of the SAFE investment and during the due diligence check created a duty through his decision to speak on the securities transaction.

76. Refinery relied on the materially false and misleading information as described herein, which Defendants disseminated with the purpose of gaining Refinery's SAFE investment. Refinery is also entitled to the presumption of reliance on the material omissions by Defendants. Had Refinery known of the financial status of Rumby, the fraudulent activity by Cantey, and/or the Boisvert Litigation, it would not have acquired the SAFE investment in Rumby. Refinery was justified in its reliance on Defendants' statements in that there was no apparent reason to doubt their representations.

77. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages in connection with its SAFE investment and was harmed upon the disclosure

that Rumby's assets have be fraudulently misappropriated and the business is on the verge of insolvency.

## COUNT II
## Common Law Fraud (Against all Defendants)

78.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

79.     This Count is alleged against all Defendants, and is based upon fraudulent misrepresentations and fraudulent concealment under Ohio law.

80.     During the relevant period, Defendants engaged in a course of conduct, in which they knowingly, or recklessly, made untrue material statements and omitted to state material information in connection with the sale of securities.  Such actions were relied upon by the Plaintiff to its detriment.

81.     At or near the time of Plaintiff's SAFE investment in Rumby, Defendants made material misstatements of fact and failed to disclose material facts in connection with the sale of the SAFE investment.  These misrepresentations and omissions include, but are not limited to: (a) grossly and materially inflating Rumby's growth numbers; (b) grossly and materially inflating Rumby's current capital; (c) misleading statements about other pending and potential investments in Rumby by large institutional investors; (d) omitting any information regarding the pending Boisvert Litigation; and (e) grossly and materially misrepresenting Cantey's trustworthiness.

82.     Cantey's position as CEO and founder provided him with control over the investment materials and statements regarding Rumby, and he had a fiduciary duty to disseminate such material information in a timely, accurate, and truthful manner.  Gould's position at the time of the SAFE investment, particularly when he knew Refinery was relying on him during a due

21

diligence check, created a relationship of trust giving rise to a duty to make full disclosure of material facts.

83.     The Individual Defendants, by virtue of their positions in Rumby, had actual knowledge of the materially false and misleading statements and material omissions alleged herein.  In the alternative, Gould acted with a reckless disregard for the truth in that he failed to obtain the necessary knowledge by taking the steps necessary to reveal whether his statements and omissions were false or misleading, although such knowledge was readily available to him.

84.     Had Refinery known of the financial status of Rumby, the fraudulent activity by Cantey, and/or the Boisvert Litigation, it would not have acquired the SAFE investment in Rumby. Refinery was justified in its reliance on Defendants' statements in that there was no apparent reason to doubt their representations.

85.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages in connection with its SAFE investment and was harmed upon the disclosure that Rumby's assets have be fraudulently misappropriated and the business is on the verge of insolvency.

## COUNT III
### Negligent Misrepresentation (Against Cantey and Gould)

86.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

87.     This Count is alleged against Individual Defendants, and is based upon negligent misrepresentations under Ohio law.

88.     Individual Defendants acted as representatives of Rumby and in doing so failed to exercise reasonable care or competence in communicating with Plaintiff regarding Rumby.

89.     Individual Defendants provided material false information, as described above, to Plaintiff, leading Plaintiff to invest through the SAFE investment in Rumby.

90.     Individual Defendants knew, or should have known, that Plaintiff would rely on their material misstatements, and Plaintiff in fact, did justifiably rely on the representations which led it to execute the SAFE investment.

91.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages in connection with its SAFE investment and was harmed upon the disclosure that Rumby's assets have be fraudulently misappropriated and the business is on the verge of insolvency.

**COUNT IV**
**Breach of Fiduciary Duty (Against Cantey and Gould)**

92.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

93.     This Count is alleged against Individual Defendants, and is based upon a breach of a fiduciary duty under Ohio law.

94.     After Plaintiff executed its SAFE investment in Rumby, Cantey, as CEO, and Gould, as a Board Member, owed Refinery a fiduciary duty, including but not limited to, the duties of fidelity, good faith, loyalty, diligence, prudence, care, honesty, and not to engage in self-dealing.

95.     Cantey breached this fiduciary duty by using Refinery's investments for his own personal benefit and not the benefit of Rumby.

96.     Gould breached this fiduciary duty by failing to adequately preserve Rumby's assets and position the company in the best place possible to stay in business or be acquired by another company.  Rumby's lack of viability and threat of insolvency is a direct result of Gould's actions upon discovery of Cantey's misappropriations.

97. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages in connection with its SAFE investment and was harmed upon the disclosure that Rumby's assets have be fraudulently misappropriated and the business is on the verge of insolvency.

98. Cantey and Gould's breaches of fiduciary duties were willful, malicious, and with conscious disregard for the obvious risk of harm to Rumby, thereby justifying an award of punitive and/or exemplary damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. With Respect to Count I:

    a. Enters judgement in favor of Plaintiff and against Defendants Rumby, Cantey, and Gould, jointly and severally, on Plaintiff's first claim for relief set forth in this Complaint, for all amounts paid by Plaintiff in its SAFE investment in Rumby, in the total amount of $3 million, plus pre- and post-judgment interest as allowed by law; and

B. With Respect to Count II:

    a. Enters judgement in favor of Plaintiff and against Defendants Rumby, Cantey, and Gould, jointly and severally, on Plaintiff's second claim for relief set forth in this Complaint, for all amounts paid by Plaintiff in its SAFE investment in Rumby, in the total amount of $3 million, plus pre- and post-judgment interest as allowed by law; and

C. With Respect to Count III:

      a.   Enters judgement in favor of Plaintiff and against Defendants Cantey, and Gould, jointly and severally, on Plaintiff's third claim for relief set forth in this Complaint for actual damages incurred as a result of the fraudulent misrepresentation in an amount to be determined at trial, as well as an award of exemplary damages.

D.  With Respect to Count IV:

      a.   Enters judgement in favor of Plaintiff and against Defendants Cantey, and Gould, jointly and severally, on Plaintiff's fourth claim for relief set forth in this Complaint for actual damages incurred as a result of the breach of fiduciary duty in an amount to be determined at trial, as well as an award of exemplary damages.

E.  With Respect to all Counts, award Plaintiff all costs and expenses associated with this action, including reasonable attorneys' fees, as well as pre- and post-judgment interest;

F.  With Respect to all Counts, grant Plaintiff's Motion for Appointment of a Receiver filed in tandem with this Complaint; and

G.  Grant Plaintiff such other and further relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiffs hereby request a trial by jury with the maximum number of jurors permitted by law on all claims so triable.

DATED this 30th day of November, 2022.

                       Respectfully submitted,

                       */s/ Lindsay K. Gerdes*

                       Lindsay K. Gerdes (OH #0100896)
                       H. Toby Schisler (OH #0068306)
                       Chelsea J Chalk (OH #0098056)

Dinsmore & Shohl, LLP
255 East 5th Street, Ste 1900
Cincinnati, OH 45202
Office: (513) 977-8200
Fax: (513) 977-8141
lindsay.gerdes@dinsmore.com
toby.schisler@dinsmore.com
chelsea.chalk@dinsmore.com

*Counsel for Plaintiff Refinery Management, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was provided to the following parties by electronic mail, accompanied with a "Waiver of the Service of Summons" form this 30th day of November, 2022:

**Defendant** Carbon IQ, Inc. (d/b/a Rumby)

c/o Nicholas DeLuca
nicholas@rumby.co
Counsel TBD

**Defendant** Benjamin Cantey

Kevin Tierney
Rittgers & Rittgers
3734 Eastern Avenue
Cincinnati, OH 45226
Phone: 513-334-0473
kevin@rittgers.com

Cole Reynolds
Cole Reynolds Law
19 E. 8th St.
Cincinnati, OH 45202
Phone: 513-480-2653
cole@colereynoldslaw.com

**Defendant** Jason Gould

Joe Carlasare
Amundsen Davis
150 North Michigan Avenue
Suite 3300
Chicago, Illinois 60601
Phone: 312-894-3200
JCarlasare@smithamundsen.com

Zachary Sharpiro
Rains
zack@rains.xyz

Sergio Acosta
Akerman
71 South Wacker Drive
47th Floor
Chicago, IL 60606
Phone: 312-634-5700
sergio.acosta@akerman.com

*/s/ Lindsay Gerdes*

27

## VERIFICATION

STATE OF OHIO        )
                       ) SS:
COUNTY Of HAMILTON  )

I, Timothy Schigel, having been first duly sworn, state that I am a duly authorized representative

of Refinery Management, LLC, a corporation, and I have read the foregoing Verified Complaint and state

that the alleged allegations and statements contained therein are true and correct to the best of my

knowledge, information, and belief.

Timothy Schigel

Sworn to and ascribed before me, this 24ᵗʰ day of November, 2022.

Notary Public

28